GERALD S. LEPRE, JR.,         )
                                     )

        Plaintiff,            )
                                     )

        v.                 )        2:12cv270
                                     )        **Electronic Filing**

PAUL S. LUKUS, CHRISTINE LUKUS, )
FOREST CITY POLICE          )
DEPARTMENT, DESIREE L.      )
SHIFLER-FERRARO, KENNETH W.  )
SEAMANS, ROBERT J. FIELDS,    )
DAVID F. BIANCO, FIELDS &     )
BIANCO, INC. SUSQUEHANNA    )
COUNTY DOMESTIC RELATIONS )
SECTION,                    )
        Defendants         )

## MEMORANDUM OPINION

Gerald Lepre, Jr. ("plaintiff") commenced this civil rights against Forest City Chief of

Police Paul Lukus and his wife Christine Lukus, Desiree L. Shifler-Ferraro, Judge Kenneth W.

Seamans of the Court of Common Pleas of Susquehanna County,  attorneys  Robert J. Fields and

David F. Bianco, and Domestic Relations Section of the Susquehanna County Court of Common

Pleas[1] (collectively "defendants") asserting § 1983 claims for violation of his First, Fifth, and

Fourteenth Amendment rights.  He claims defendants conspired against him, under color of state

---

[1] Plaintiff has filed a motion to proceed in forma pauperus at civil action 12-1658 based on the underlying events giving rise to this action.  There, he seeks to pursue § 1983 claims against Susquehanna County Children & Youth Services; Susan Adamec; Deana Wasko; Mark H. Darmofal; Jodi Ellis Cornder; Jeffrey R. Norris; Brianna M. Strope; Raebelle Taylor; Diana Snow; Michelle Jerauld; Brenda Landes; Roberta Collins; Susquehanna County Domestic Relations Section; Susquehanna County Office of the Prothonotary; Susan Eddleston; Susquehanna County Court of Stenographers Office; Amy Curley; Lori Shelp; and the Court of Common Pleas of Susquehanna County.  The court has construed the filing at 2:12cv1658 as a motion for leave to amend.

law, in order to deprive him of his parental rights to his biological child, MCL, and improperly extorted child support from him at the same time. He seeks declaratory, injunctive and monetary relief. Presently before the court are defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) and alternatively for transfer to the United States District Court for the Middle District of Pennsylvania. For the reasons set forth below, the motions will be granted in part and the action will be transferred. Plaintiff's claims against Judge Seamans, Attorneys Fields and Bianco, and the Domestic Relations Section division of the Susquehanna County Court of Common Pleas will be dismissed. Plaintiff will be required to provide a more definite statement of his purported claims against defendants Paul and Christine Lukus, Shifler-Ferraro and the Forest City Police Department and the action against these defendants will be transferred to the Middle District in any event. The motions will be denied in all other aspects without prejudice to renew the issues raised therein as deemed to be appropriate in any subsequent proceedings in the transferee forum.

It is well-settled that in reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "[t]he applicable standard of review requires the court to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." Rocks v. City of Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). Under the Supreme Court's decision in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 561 (2007), dismissal of a complaint pursuant to Rule 12(b)(6) is proper only where the averments of the complaint plausibly fail to raise directly or inferentially the material elements necessary to obtain relief under a viable legal theory of recovery. Id. at 544. In other words, the allegations of the complaint must be grounded in enough of a factual basis to move the claim from the realm of mere possibility to one that shows entitlement by

presenting "a claim to relief that is plausible on its face." Ashcroft v. Iqbal, – U.S. –, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In contrast, pleading facts that only offer "'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,'" nor will advancing only factual allegations that are merely consistent with a defendant's liability. Id. Similarly, tendering only "naked assertions" that are devoid of "further factual enhancement" falls short of presenting sufficient factual content to permit an inference that what has been presented is more than a mere possibility of misconduct. Id. at 1949-50; see also Twombly, 550 U.S. at 563 n. 8 (A complaint states a claim where its factual averments sufficiently raise a "'reasonably founded hope that the [discovery] process will reveal relevant evidence' to support the claim.") (quoting Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 347 (2005) & Blue Chip Stamps v. Manor Drug Stores, 421 U.S. 723, 741 (1975)); accord Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997) (a court need not credit "bald assertions" or "legal conclusions" in assessing a motion to dismiss) (citing with approval Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d ed.1997) ("courts, when examining 12(b)(6) motions, have rejected 'legal conclusions,' 'unsupported conclusions,' 'unwarranted inferences,' 'unwarranted deductions,' 'footless conclusions of law,' or 'sweeping legal conclusions cast in the form of factual allegations.'").

This is not to be understood as imposing a probability standard at the pleading stage. Iqbal, 129 S. Ct. at 1949 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."); Phillips v.

County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (same). Instead, "[t]he Supreme Court's

Twombly formulation of the pleading standard can be summed up thus: 'stating ... a claim

requires a complaint with enough factual matter (taken as true) to suggest the required element ...

[and provides] enough facts to raise a reasonable expectation that discovery will reveal evidence

of the necessary element.'" Phillips, 515 F.3d at 235; see also Wilkerson v. New Media

Technology Charter School Inc., 522 F.3d 315, 321 (3d Cir. 2008) ("The complaint must state

'enough facts to raise a reasonable expectation that discovery will reveal evidence of the

necessary element.'") (quoting Phillips, 515 F.3d at 235) (citations omitted). "Once a claim has

been stated adequately, it may be supported by showing any set of facts consistent with the

allegations in the complaint." Twombly, 550 U.S. at 563.

It also is well settled that pleadings filed by *pro se* litigants are to be construed liberally.

McNeil v. United States, 508 U.S. 106, 113 (1993); Higgins v. Beyer, 293 F.3d 683, 688 (3d Cir.

2002). And in such circumstances the court has an obligation to "apply the applicable law,

irrespective of whether a *pro se* litigant has mentioned it by name." Higgins, 293 F.3d at 688

(quoting Holley v. Dept. of Veterans Affairs, 165 F.3d 244, 247-48 (3d Cir. 1999)).

But the above-referenced standards are not to be read as a license to excuse or overlook

procedural shortcomings in pleadings submitted by those who choose to represent themselves.

McNeil, 508 U.S. at 113 ("we have never suggested that procedural rules in ordinary civil

litigation should be interpreted so as to excuse mistakes by those who proceed without counsel").

Thus, a complaint drafted without the benefit of counsel nevertheless must comply with Federal

Rule of Civil Procedure 8(a). And, while Fed. R. Civ. P. 8(a)(2) requires only a "short and plain

statement of the claims showing that the pleader is entitled to relief," Rule 12(b)(6) is not without

meaning. Krantz v. Prudential Investments Fund Management, 305 F.3d 140, 142 (3d Cir.

4

2002). It follows that in order to comply with the applicable pleading standards "more detail is often required than the bald statement by plaintiff that he has a valid claim of some type against defendant." Id. at 142 - 43 (quoting Charles A. Wright and Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE, § 1357 at 318 (2d ed. 1990)). This principle appears to be even more well-grounded after Twombly.

The record as read in the light most favorable to plaintiff establishes the background set forth below. Plaintiff is domiciled in Allegheny County, Pennsylvania. Complaint at ¶ 1. He is the biological father of MCL. Id. at ¶ 11. Defendant Desiree Lee Shifler is the biological mother of MCL. As well, defendants Paul and Christine Lukus are the step and biological paternal grandparents (respectively) of MCL. Id. at ¶ 13. Further, Paul Lukus is the Chief of Police in Forest City in Susquehanna County, Pennsylvania. Id. at ¶ 3. A custody order was entered by the Honorable Kenneth W. Seamans, which decreed that plaintiff would have partial custody of MCL and Shifler would obtain primary custody. Id. at ¶ 15. Thereafter, Shifler relocated several times with MCL and changed her telephone number in an effort to elude plaintiff and deny him his parental rights and as a result he was unable to maintain his partial custody and visitation rights. Id. at ¶ 16.

On November 23, 2010, Paul and Christine Lukus gained physical custody of MCL by trickery and without plaintiff's consent or filing a petition in court. Thereafter, Paul and Christine Lukus have prevented plaintiff from visiting and exercising his parental rights by threatening to have him arrested, all while demanding child support and concocting a scheme to file an action for child support. Id. at ¶¶17-18. Notwithstanding these actions, on December 23, 2010, plaintiff filed for custody in the Court of Common Pleas of Susquehanna County, Pennsylvania. Id. at ¶ 19. To reciprocate, the Lukus' filed for child support on January 17, 2011

5

at the prompting of the Susquehanna County Domestic Relations Section. Id. at ¶¶ 19-20. A child support order was entered by the Susquehanna County Domestic Relation Section against plaintiff, while no hearing has been held on the petition for child custody modification filed by him, notwithstanding his repeated requests for expedited hearings. Id. at ¶¶ 21-23.

Paul and Christine Lukus were represented by attorneys Robert J. Fields and David F. Bianco of the law firm Fields & Bianco during the proceedings in court. Id. at 23. These attorneys are friends of the Lukuses and friends of Judge Seamans. Id. All of these defendants have a cordial relationship with one another. Id. at ¶¶ 22-23.

Due to these cordial relationships, the Lukuses have failed to appear for hearings without repercussion from Judge Seamans and he has sought to hold plaintiff accountable for their non-compliance. In addition, the Lukuses have been permitted to pursue child custody and support under three separate theories, none of which has alleged that plaintiff is incapable of parenting or caring for MCL. Id. at ¶¶ 24-25.

Each defendant acted in concert with one another to deny plaintiff his constitutional right to be a parent to MCL and to deprive him of his rights to life, liberty and property under the Fifth and Fourteenth Amendments. Id. at ¶¶ 26-27. An order of child support and wage attachment and garnishment have been entered against plaintiff in violation of these rights. Id. Defendants have further conspired to deny plaintiff the ability to seek redress from the courts. Id. at ¶ 29. All of which has been done to implement a conspiracy under color of state law "to legally extort child support" from plaintiff without the Lukuses having to petition for custody of MCL. ¶ 32.

Thus, plaintiff demands declaratory and injunctive relief, compensatory damages, and punitive damages. ¶¶ 37-41. In addition, he challenges the constitutionality of 23 Pa. C. S. § 4341(b), which provides that "[a]ny person caring for a child shall have standing to commence or

6

continue an action for support of that child regardless of whether a court order has been issued

granting that person custody of the child." Id. at ¶¶ 36, 38.

A § 1983 claim provides a vehicle for vindicating a violation of federal rights. Groman

v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). A cause of action under §1983 has

two elements: a plaintiff must prove (1) a violation of a right, privilege or immunity secured by

the constitution or laws of the United States (2) that was committed by a person acting under

color of state law. Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996); Kelly v. Borough of

Sayreville, 107 F.3d 1073, 1077 (3d Cir. 1997); Berg v. Cty. of Allegheny, 219 F.3d 261, 268

(3d Cir. 2000) ("The Plaintiff must demonstrate that a person acting under color of law deprived

him of a federal right.") (citing Groman, 47 F.3d at 633)).

It is undisputed that Judge Seamans, the Susquehanna County Domestic Relations

Section, and Forest City Police Department were acting under color of state law. Fields and

Bianco dispute that they were acting under color of state law.

In order to establish that a defendant violated a constitutional right, "the exact contours of

the underlying right said to have been violated" must be determined. Berg, 219 F.3d at 268

(citing City of Sacramento v. Lewis, 523 U.S. 833, 841 n. 5 (1998)). While plaintiff generally

asserts that he was denied his rights to life, liberty, or property, deprived of his constitutional

right to be a parent to his child, and denied the ability to seek redress in the courts, he fails to set

forth any further factual detail from which to determine whether his rights plausibly were

violated. Nevertheless, the court will afford plaintiff the most favorable reading possible in light

of his pro se status and proceed with the issues raised in defendants' motions.

Judge Seamans contends he is a judicial defendant and invokes judicial immunity.

Immunity from suit applies to judicial officers in the performance of their official duties, thereby

relieving them from liability for judicial acts.  <u>Azubuko v. Royal</u>, 443 F.3d 302, 303 (3d Cir.

2006) (citing <u>Mireles v. Waco</u>, 502 U.S. 9 (1991)).  Furthermore, a "judge will not be deprived

of immunity because the action he took was in error, was done maliciously, or was in excess of

his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of

all jurisdiction.'"  <u>Azubuko</u>, 443 F.3d at 303 (citing <u>Stump v. Sparkman</u>, 435 U.S. 349, 356-57

(1978)).

Although immunity is an affirmative defense, "a complaint may be subject to dismissal

under Rule 12(b)(6) when an affirmative defense ... appears on its face."  <u>ALA, Inc. v. CCAIR,

Inc.</u>, 29 F.3d 855, 859 (3d Cir.1994); <u>see</u> <u>also</u> 5A CHARLES A. WRIGHT & ARTHUR R. MILLER,

FEDERAL PRACTICE AND PROCEDURE § 1357, at 358–59 (1990) (citing cases).  Accordingly,

absolute or qualified immunity "will be upheld on a 12(b)(6) motion only when the immunity is

established on the face of the complaint."  <u>Leveto v. Lapina</u>, 258 F.3d 156, 161 (3d Cir. 2001)

(quoting <u>Hafley v. Lohman</u>, 90 F.3d 264, 266 (8th Cir.1996) (citation omitted)); <u>accord</u> <u>Pani v.

Empire Blue Cross Blue Shield</u>, 152 F.3d 67, 74 (2d Cir.1998) (recognizing entitlement to

official immunity on face of complaint); <u>Santamorena v. Georgia Military College</u>, 147 F.3d

1337, 1342 (11th Cir.1998) (recognizing entitlement to qualified immunity on face of

complaint).

Plaintiff's claim against Judge Seamans is based on a child custody and support orders

that were entered against plaintiff in the Court of Common Pleas of Susquehanna County.  Judge

Seamans is alleged to have conspired with the Lukuses in awarding custody and/or permitting

them to maintain physical custody of MCL and permitting them to extort support from plaintiff

without proceeding on his petition for custody modification.  As plaintiff's claim against Judge

Seamans is based on the performance of his duties, he clearly is entitled to judicial immunity on the claims advanced against him.  As a result, these claims must be dismissed.

Plaintiff claims that attorneys Fields and Bianco joined in the conspiracy with the Lukuses and Judge Seamans by representing the Lukuses in the state proceedings.  It is well settled, however, that a plaintiff cannot establish the existence of conspiratorial conduct through the actions undertaken by counsel as part of an attorney-client relationship.  Hefferan v. Hunter, 189 F.3d 405, 413 (3d Cir. 1999).  Thus, as long as the attorney is acting in his or her official capacity and within the scope of representing the client, the attorney enjoys immunity from suit under the Civil Rights Act.  Id.; accord N'Jai v. Floyd, 386 Fed. Appx. 141, 144 (3d Cir. 2010) (school districts' attorneys who acted in representative capacity in the plaintiff's civil rights and discrimination cases could not be found "liable under 42 U.S.C. §§ 1983, 1985, or 1986.").  Liability may attach in such settings only where the attorney acts solely in a personal capacity and not within the scope of the attorney-client agency.  Hefferan, 189 F.3d at 412 (citing in support Fraidin v. Weitzman, 611 A.2d 1046, 1077-80 (Md. App. 1992) (no conspiracy when attorneys act within scope of employment unless they act for their "sole personal benefit")).  The courts consistently have been followed these principles in this jurisdiction.  See e.g. Singleton v. Pittsburgh Bd. of Educ., 2012 WL 4063174, * 6-8 & n. 8 (W.D. Pa. August 24, 2012) (Lenihan, Magistrate Judge) (allegations that indicate among other things that an attorney was acting for the benefit of his or her clients and not solely for his or her personal benefit cannot provide the relationship necessary to confer state actor status on the attorney under § 1983) (collecting cases).

Moreover, immunity from § 1983 conspiratorial liability remains even where an attorney acts for "mixed motives" so long as at least one basis for the challenged conduct is within the

scope of the agency.  Hefferan, 189 F.3d at 413.  In other words, the mere fact that the

challenged conduct may benefit the attorney does not make it actionable provided it is

undertaken within the scope of representation.  Id.  And this is so even where the conduct

violates the canons of ethics.  Id.  ("The challenged activity may violate the canons of ethics, but

so long as it is within the scope of representation, it does not eliminate the exemption from a

conspiracy charge" under the Civil Rights Act.).

Plaintiff has failed to advance any factual basis to make it plausible that Fields and

Bianco acted solely for their own personal benefit.  Even though there is alleged to be a cordial

relationship between Fields, Judge Seamans, and the Lukuses, the representing attorneys cannot

be  deemed to have acted outside the scope of representation solely based on that relationship.

The facts alleged create the inference that the attorneys carried out their duties to represent their

clients within the scope of the attorney-client agency and received a decision in favor of their

clients.   Additionally, if the attorneys did personally benefit from a favorable child custody or

support order, the facts nevertheless indicate that they were acting in their official capacity in

representing their clients.  Thus, there is no basis to support a showing of conspiratorial conduct

and plaintiff's claims against attorneys Fields and Bianco must be dismissed.

Plaintiff asserts claims against Susquehanna County Domestic Relations Section of the

Susquehanna Court of Common Pleas asserting that it conspired with all other defendants in

awarding custody of MCL and entering support orders against plaintiff because it prompted the

Lukuses to institute child support proceedings.  This defendant invokes immunity under the

Eleventh Amendment.

Suits against the state are barred by the Eleventh Amendment.[2]  Alabama v. Pugh, 438

U.S. 781, 781-82 (1978).  Eleventh Amendment immunity applies to suits against the state

regardless of the relief sought.  In re Kish, 212 B.R. 808, 814 (Bkrtcy D. N.J. 1997) ("the

'jurisdictional bar [of the Eleventh Amendment] applies regardless of the relief sought'") (citing

Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100–01 (1984)); see also Cory v.

White, 457 U.S. 85, 90, (1982) ("It would be a novel proposition indeed that the Eleventh

Amendment does not bar a suit to enjoin the state itself simply because no money judgment is

sought.").

Suits against a state agency or a state department are considered to be suits against a state

which are barred by the Eleventh Amendment.  In re Kish, 221 B.R. 118, 124-25 (Bkrtcy. D. N.J.

1998) (quoting Geis v. Board of Educ. of Parsippany–Troy Hills, Morris Cnty., 774 F.2d 575,

580 (3d Cir.1985));  accord Hafer v. Melo, 502 U.S. 21, 25 (1991); Haybarger v. Lawrence

County Adult Probation And Parole, 551 F.3d 193, 198 ("the Eleventh Amendment applies to

suits against subunits of the State") (citing Pennhurst, 465 U.S. at 100).  And suits against state

officials for acts taken in their official capacity must be treated as suits against the state.  Hafer,

502 U.S. at 25.

"The Commonwealth [of Pennsylvania] vests judicial power in a unified judicial system,

and all courts and agencies of [that system] are part of the Commonwealth government rather

than local entities."  Haybarger, 551 F.3d at 198 (citing Benn v. First Judicial Dist. of Pa., 426

F.3d 233, 240-41 (3d Cir.2005) and Pa. Const. art. V, § 1)).  It is likewise settled that

"Pennsylvania's judicial districts ... are entitled to Eleventh Amendment immunity."  Id.

---

[2] The Eleventh Amendment "enacts a sovereign immunity from suit, rather than a nonwaivable
limit on the federal judiciary's subject-matter jurisdiction."  Idaho v. Coeur d'Alene Tribe of
Idaho, 521 U.S. 261, 267 (1997).

The Domestic Relations Section is a subunit of the Susquehanna County Court of Common Pleas, and thus it is a subunit of the Commonwealth's unified judicial system. See 42 Pa.C.S.A.§ 961 ("Each court of common pleas shall have a domestic relations section . . ."); accord Chilcott v. Erie County Domestic Relations, 283 Fed. Appx. 8, 10 (3d Cir. 2008) ("Furthermore, the District Court properly dismissed the suit against the Erie County Prison and the Erie County Domestic Relations Section of the Erie County Court of Common Pleas because the Eleventh Amendment of the United States Constitution protects an unconsenting state or state agency from a suit brought in federal court by one of its own citizens.").

The Susquehanna County Domestic Relations Section is a subunit of the Susquehanna County Court of Common Pleas. The Susquehanna County Court of Common Pleas is a state entity. Immunity attaches to the actions of the Susquehanna County Domestic Relations Section pursuant to the Eleventh Amendment. Accordingly, plaintiff's claims against this entity must be dismissed.

Plaintiff appears to level his claims against the Forest City Police Department based on the contention that Paul Lukus utilized its authority and the members of the force to threaten plaintiff. Complaint at ¶ 18. The Forest City Police Department moves for dismissal on the ground that the claims against it are based on the theory that it employed Paul Lukus and thus are predicated on an application of doctrine of respondeat superior.

Plaintiff argues in his submissions that Paul Lukus as Chief of Police and Forest City Police Department threatened to imprison him if he attempted to come near MCL. However, plaintiff does not state in his complaint with any factual clarity the actions, if any, of the particular members of the Forest City Police Department that were taken against him.

Whether a municipal entity may be held liable under § 1983 is governed by the doctrine announced in Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). There, the Supreme Court held that liability against such an entity may not be established by the respondeat superior doctrine, but instead must be founded upon evidence indicating the government itself supported a violation of the plaintiff's constitutional rights. Id. at 694; see also Bielevicz v. Dubinon, 915 F.3d 845, 849-50 (3d Cir. 1990) (stating "municipal liability attaches only when 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.'") (quoting Monell, 436 U.S. at 694).

Proving a government policy or custom can be accomplished in a number of different ways. Bielevicz, 915 F.2d at 850. "Policy is made when a 'decisionmaker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy or edict." Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). Custom, in contrast, can be proven by demonstrating that a given course of conduct, although not specifically endorsed or authorized by state or local law, is so well-settled and permanent as virtually to constitute law. Id. (citing Fletcher v. O'Donnell, 867 F.2d 791, 793-94 (3d Cir.) ("Custom may be established by proof of knowledge and acquiescence."), cert. denied, 42 U.S. 919 (1989)).

Here, the alleged policy is not sufficiently identified. Paul Lukus and the Forest City Police Department have been linked together by plaintiff. As chief of police, Paul Lukus may have had the authority or ability to establish official policy or a custom or practice of the police force. Accordingly, the Forest City Police Department's motion will be granted to the extent it seeks a more definite statement of the claims against it and denied without prejudice to renew

any of the current grounds for dismissal after plaintiff has been given an opportunity to set forth any additional factual allegations he can advance regarding Paul Lukus and his use of the members of the police force against plaintiff.

The Lukuses and the Forest City Police Department alternatively move for a transfer of the action to the United States District Court for the Middle District of Pennsylvania asserting that plaintiff has improperly attempted to lay venue in this district.  Short of dismissal pursuant to Rule 12(b)(3), they request a transfer pursuant to 28 U.S.C. § 1404(a) based on the convenience of the parties.  Plaintiff opposes the relief on the grounds that he resides in the Western District, the effect of defendants' conduct has caused him harm, and it would be terribly inconvenient for him to litigate this matter in the Middle District.

Venue must be proper for each claim in a case with multiple claims.  Phila. Musical Soc'y, Local 77 v. Am. Fed'n of Musicians of the United States and Canada, 812 F. Supp. 509, 517 (E.D. Pa. 1992).  Since subject matter jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1391(a), which governs venue in diversity cases, is applicable.  This statute allows for venue to be properly laid in:

> (1) a judicial district where any defendant resides, if all defendants reside in the
>
> same State, (2) a judicial district in which a substantial part of the events or
>
> omissions occurred, or a substantial part of property that is the subject of the
>
> action is situated, or (3) a judicial district in which any defendant is subject to
>
> personal jurisdiction at the time the action is commenced, if there is no district in
>
> which the action may otherwise be brought.

28 U.S.C. § 1391(a).

14

Here, plaintiff's complaint avers that all defendants reside in Susquehanna County, Pennsylvania, which is in the Middle District. Since all defendants reside in the Middle District, none reside in the Western District. While plaintiff complains that the effects of defendants' conduct have had an effect on him in this district, it cannot be disputed that all of the actual events about which plaintiff complains occurred in the Middle District. The only basis in the facts to support the Western District as a proper venue is that plaintiff resides here. Of course, this does not establish that there is no other district where the action might have been brought. Consequently, venue has been improperly laid for any remaining claims against the Lukuses, Shifler-Ferraro and Forest City Police Department.

The lack of proper venue raises the issue of whether plaintiff's claims should be dismissed pursuant to 12(b)(3) or transferred pursuant to 1406(a) or 1404(a). Consideration must be given to transferring the action before the more drastic remedy of dismissal is employed. Jumara v. State Farm Ins. Co., 55 F.3d 873, 877 (3d Cir. 1995).

Section 1406(a) states: "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or in the interest of justice, transfer such case to any district or division in which it could have been brought." Section 1404(a) states: "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

It is clear that the instant action could have been filed in the Middle District. Defendants are subject to personal jurisdiction in that district. Venue could be laid properly there because the defendants reside there and all or a substantial part of the events underlying the complaint occurred there. It follows that a transfer to that district is warranted.

15

Moreover, a transfer to the Middle District is warranted for the convenience of the parties. The Lukuses and the Forest City Police Department contend that all defendants and the court hearings, filings, proceedings and rulings of which plaintiff complains occurred or are located there. The sole connection to the Western District is that it is plaintiff's domicile.

Plaintiff contends that a change of venue is improper. He maintains that a transfer would be a financial burden on him due to a lack of transportation from Allegheny County to Susquehanna County. Further, he has a witness who resides in the Western District. Lastly, he asserts that his choice of forum should be given deference.

In considering a § 1404(a) motion to transfer, the first step is to determine whether the action "might have been brought" in the transferee forum. The transferor court must determine whether plaintiff has an unqualified right to commence the action in the transferee district and whether the transferee forum has the power to exercise personal jurisdiction over all defendants. Camasso v. Dorado Beach Hotel Corp., 689 F. Supp. 384, 386 (D. Del. 1988) (citing Hoffman v. Blaski, 363 U.S. 335, 343-44 (1960)). Plaintiff concedes that the action could have been filed in the Middle District and it would have jurisdiction over the matter. See Plaintiff's Brief in Opposition (Doc. No. 74) at 17.

In assessing a § 1404(a) motion there is no precise limit on the number of factors the court may consider. The analysis is flexible and must be guided by the facts and circumstances of the case. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 249-50 (1981); Van Dusen v. Barrack, 376 U.S. 612, 623 (1964); Sandvic, Inc. v. Continental Ins. Co., 724 F. Supp. 303, 307 (D. N.J. 1998). All relevant factors are to be considered in determining whether on balance the litigation would more conveniently proceed and the interests of justice would be better served by the

requested transfer to a different forum.  Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995).

The moving party has the burden of submitting adequate information to justify the transfer.  American Tel. & Tel. Co. v. MCI Communication Corp., 736 F. Supp. 1294, 1306-07 (D. N.J. 1990).  In submitting adequate data of record to support the transfer, the moving party is required to address the relevant private and public interest factors at issue.  The private interest factors include: (1) plaintiff's choice of forum, (2) ease of access to sources of proof, (3) costs involved in obtaining the attendance of willing witnesses, (4) compulsory process for unwilling witnesses, (5) practical problems that make a trial easy, expeditious and inexpensive and (6) the convenience of the parties.  Public interests factors are: (1) congestion of court dockets, (2) choice of law considerations and (3) community interests in having a dispute resolved in a local forum.  See Gulf Oil Corp. v. Gilbert, 303 U.S. 501, 508-09 (1947); Jumara, 55 F.3d at 879; Luca Oil Drilling Co. v. Gulf Oil Corp., 593 F. Supp. 1198, 1200 (W.D. Pa. 1984).

The first step in analyzing the private interest factors is to determine the proper weight to be accorded to the plaintiff's choice of forum.  Where the plaintiff has chosen a legally correct forum which is the forum of the plaintiff's residence, there is a strong presumption in favor of the plaintiff's choice which should not be lightly disturbed.  Shutte v. Armco Steel Co., 431 F.2d 22, 25 (3d Cir. 1970), cert. denied, 401 U.S. 910 (1971).  However, where none of the conduct complained of occurred in plaintiff's chosen forum, plaintiff's choice is entitled to less deference.  See Bartolacci v. Corp. of Presiding Bishop of Church of Jesus Christ of Later-Day Saints, 476 F. Supp. 381, 383 (E.D. Pa. 1979).

Here, plaintiff resides in the Western District but has not identified any alleged wrongful conduct that occurred here.  The alleged wrongful conduct occurred in the Middle District and it

appears to be the only district where venue properly can be laid. Because the conduct complained of did not occur in the Western District and plaintiff has chosen an improper forum, his choice of forum is not entitled to any deference.

There are other private interest factors that must be examined to assess the convenience of parties together with the interest of justice. One factor is the ease of access to the sources of proof. All court hearings, filings, proceedings, and rulings have occurred in the Middle District. Plaintiff has not disputed these facts.

Additionally, the costs involved in obtaining the attendance of witnesses will be minimal since the remaining defendants appear to be domiciled in the Middle District. Plaintiff has asserted that he has a witness who is located in the Western District; however, the mere mention of one witness is of little weight when compared to the other events that occurred and parties who are located in the Middle District. Further proceedings in that district will permit the most expeditious and convenient resolution for all parties.

Plaintiff aptly notes that a motion to transfer cannot be granted merely to shift the inconvenience from one party to the other. Here, venue is improper in this district and the only connection with the Western District is the fact that plaintiff resides here. All of the other considerations weigh in favor of transferring the action to the Middle District. Consequently, transferring the action for further proceedings for the benefit of all the parties is hardly shifting the convenience from one party to the other.

Based on the foregoing reasons, defendants have met their burden of demonstrating the convenience of the parties warrants a transfer under § 1404(a); such a transfer also is in the interest of justice within the meaning of § 1406. Accordingly, the Clerk will be directed to

transfer the action to the United States District Court for the Middle District of Pennsylvania.

Date: March 26, 2013

s/ David Stewart Cercone
David Stewart Cercone
United States District Judge

cc:     Gerald S. Lepre, Jr.
        P.O. Box 58139
        Pittsburgh, PA 15209

        (*Via First Class Mail*)

        Counsel of Record

        (*Via CM/ECF Electronic Mail*)